No. 23-20188

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

MICHEL KECK,

*Plaintiff-Appellant / Cross-Appellee*,

v.

MIX CREATIVE LEARNING CENTER, L.L.C.; JACQUELINE P.
KENNEALLY; DOES 1-10 INCLUSIVE,

*Defendants-Appellees / Cross-Appellants*.

On Appeal from the United States District Court
for the Southern District of Texas
No. 4:21-cv-00430
Hon. Keith P. Ellison, United States District Judge

APPELLANT'S PRINCIPAL BRIEF

Andrew Grimm
DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive
Omaha, Nebraska 68154
(531) 210-2381
Andrew@DigitalJusticeFoundation.org

Gregory Keenan
DIGITAL JUSTICE FOUNDATION
81 Stewart Street
Floral Park, New York 11001
(516) 633-2633
Gregory@DigitalJusticeFoundation.org

*Attorneys for Appellant*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

| Appellant | Appellant's Counsel |
|---|---|
| Michel Keck | DIGITAL JUSTICE FOUNDATION, Omaha, Nebraska (Gregory Keenan, Andrew Grimm) |
| | HIGBEE & ASSOCIATES, Santa Ana, California (Matthew Higbee, Ryan Carreon,  Naomi Sarega) |
| | BRADLEY ARANT BOULT CUMMINGS, Houston, Texas (Philip Morgan, John Davis, David Hymer) |

| Appellees | Appellees' Counsel |
|---|---|
| Mix Creative Learning Center, L.L.C. | GREENBERG TRAURIG, Houston, Texas (Roland Garcia, Jr., Mark Chretien) |
| Jacqueline Kenneally | |
| Does 1-10 | |

Date: October 4, 2023

Respectfully submitted,

*/s/ Andrew Grimm*
Andrew Grimm

*Attorney of record for Appellant Michel Keck*

# ORAL-ARGUMENT STATEMENT

Appellant Michel Keck believes that oral argument would aid the decisional processes of this Court and, so, she respectfully requests that the Court grant 15 minutes of oral argument per side.

Oral argument might be especially helpful here because, after the District Court issued its order on summary judgment and after appeal was taken, the Supreme Court issued a major decision on transformative fair use, a central issue here. See generally Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith, 143 S. Ct. 1258, 1277 (2023).

In addition, oral argument would permit counsel to address the Court's inquiries regarding the appeal—such as on key factual distinctions (*i.e.*, merely posting an image versus launching an e-commerce business based upon unauthorized uses of copyrighted works) or policy implications (the challenges of online infringement; the ease of contacting artists to seek licenses or collaborations in an online, social-media age, *etc.*).

Date: October 4, 2023

Respectfully submitted,

*/s/ Andrew Grimm*
Andrew Grimm

*Attorney for Appellant*

**TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS ....................................................... ii

ORAL-ARGUMENT STATEMENT ..................................................................... iii

TABLE OF AUTHORITIES .............................................................................. vii

JURISDICTIONAL STATEMENT ........................................................................1

RELEVANT STATUTORY PROVISIONS ............................................................3

    I.       15 U.S.C. § 1115 ....................................................................3

    II.      17 U.S.C. § 107 ......................................................................4

    III.    17 U.S.C. § 505 ......................................................................5

STATEMENT OF ISSUES ...................................................................................6

    I.       COPYRIGHT FAIR USE ...........................................................6

    II.      TRADEMARK FAIR USE ..........................................................7

    III.    COPYRIGHT FEE-SHIFTING ...................................................8

STATEMENT OF THE CASE...............................................................................9

    I.       THE UNAUTHORIZED USES ...................................................9

    II.      THE PROCEEDINGS BELOW .................................................11

SUMMARY OF ARGUMENT ............................................................................12

STANDARDS OF REVIEW ...............................................................................14

ARGUMENT ...................................................................................................15

    I.       THE DISTRICT COURT ERRED ON THE COPYRIGHT CLAIMS. .................15

A.    The District Court erred on the first nature-of-the-use factor because these uses were highly commercial, non-transformative, and were not made in good faith. ....................16

B.    The District Court correctly held that the second nature-of-the-work factor supports Ms. Keck............................................28

C.    The District Court correctly held that the third amount-taken factor supports Ms. Keck. ..............................................30

D.    The District Court erred on the fourth market-impact factor because Defendants failed to meet their burden of proof while Ms. Keck showed evidence of harm to the works' derivative markets. ...................................................31

II.    THE DISTRICT COURT ERRED ON THE TRADEMARK CLAIMS. ...............39

A.    The District Court should not have ruled on the trademark claims at all because Defendants did not raise or address the trademark claims in their motion for summary judgment....................................................................40

B.    The District Court should not have dismissed the trademark claims because copyright fair use does not apply to trademark and, under the correct standard, there is no trademark fair use here.............................................47

C.    The District Court should also be reversed because, even assuming *arguendo* copyright fair use could apply to trademarks, the District Court misapplied copyright fair-use standards. .........................................................50

III.    THE DISTRICT COURT ERRED ON COPYRIGHT FEE-SHIFTING. ..............51

A.    If this Court reverses or vacates the District Court on copyright fair use, then the copyright-fees order should be vacated because Defendants would no longer be prevailing parties. ....................................................................52

B.    The District Court's copyright fee order should be reversed because it committed legal error in applying the *Fogerty*

factors and adopted an erroneous dual-standard presumption to fees. ..................................................................54

    i.  The District Court abused its discretion by applying incorrect copyright fee-shifting standards. ..............................54

    ii.  The District Court committed clear legal and factual errors when applying the *Fogerty* factors. ...............................61

C.    In the alternative, the District Court's fee award overlooked the scope of Ms. Keck's objections and awarded fees for defenses on which Ms. Keck prevailed. ...................................70

CONCLUSION .......................................................................................71

CERTIFICATE OF COMPLIANCE .......................................................72

CERTIFICATE OF SERVICE ................................................................73

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

A&M Records v. Napster, Inc.,
  239 F.3d 1004 (9th Cir. 2001) ..................................................30

Abner v. Kan. City S. Ry. Co.,
  541 F.3d 372 (5th Cir. 2008) ...................................................70

Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith,
  11 F.4th 26 (2d Cir. 2021) ............................................. 18, 21, 25

Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith,
  143 S. Ct. 1258 (2023)..................................................................
    ............................iii, 16, 17, 21, 22, 23, 26, 28, 30, 31, 32, 33, 34, 35, 36, 37

Authors Guild v. Google, Inc.,
  804 F.3d 202 (2d Cir. 2015) ....................................................37

Bd. of Supervisors for La. State Univ. Agric. & Mech. College v. Smack
  Apparel Co., 550 F.3d 465 (5th Cir. 2008) ............................ 48, 49

Bell v. Eagle Mt. Saginaw Indep. Sch. Dist.,
  27 F.4th 313 (5th Cir. 2022)......................... 17, 18, 19, 23, 28, 35

Bell v. Wilmott Storage Servs., LLC,
  12 F.4th 1065 (9th Cir. 2021) ..................................................62

Brammer v. Violent Hues Prods.,
  LLC, 922 F.3d 255 (4th Cir. 2019) ........................... 19, 26, 28, 62

Britt v. Miss. Farm Bureau Cas. Ins. Co.,
  2022 U.S. App. LEXIS 33583 (5th Cir. Dec. 6, 2022) .................44

BWP Media United States v. T & S Software Assocs.,
  852 F.3d 436 (5th Cir. 2017) ...................................................14

Campbell v. Acuff-Rose Music, Inc.,
  510 U.S. 569 (1994)................................... 23, 25, 28, 32, 33, 35, 36

Chivalry Film Prods. v. NBC Universal, Inc.,
  2007 WL 4190793 (S.D.N.Y. Nov. 27, 2007) ............................68

Crittindon v. LeBlanc,
  37 F.4th 177 (5th Cir. 2023) ...................................................45

Cruz v. Arizona,
    143 S. Ct. 650 (2023)......................................................................67

D'Onofrio v. Vacation Publs., Inc.,
    888 F.3d 197 (5th Cir. 2018) ........................................................43

Dig. Drilling Data Sys., L.L.C. v. Petrolink Servs.,
    965 F.3d 365 (5th Cir. 2020) ..................................... 56, 57, 58, 60

Dr. Seuss Enters., L.P. v. ComicMix LLC,
    983 F.3d 443 (9th Cir. 2020) ...................................... 25, 32, 34

Duncan v. Governor of the Virgin Islands,
    48 F.4th 195 (3d Cir. 2022) ..........................................................54

Feist Pubs., Inc. v. Rural Tel. Serv. Co.,
    499 U.S. 340 (1991)......................................................................63

Fogerty v. Fantasy, Inc.,
    510 U.S. 517 (1994)........................................ 55, 56, 57, 58, 59, 66

Fox v. Vice,
    563 U.S. 826 (2011)......................................................................54

Garcia v. United States,
    986 F.3d 513 (5th Cir. 2021) ........................................................40

Graham-Sult v. Clainos,
    738 F.3d 1131 (9th Cir. 2013) ......................................................52

Harper & Row, Publrs. v. Nation Enters.,
    471 U.S. 539 (1985)............................................ 30, 31, 32, 33, 35, 36, 37

Hensley v. Eckerhart,
    461 U.S. 424 (1983).....................................................................59

Horphag Research Ltd. v. Garcia,
    475 F.3d 1029 (9th Cir. 2007) ......................................................48

Hubbell v. FedEx SmartPost, Inc.,
    933 F.3d 558 (6th Cir. 2019) ........................................................47

Hunn v. Dan Wilson Homes, Inc.,
    789 F.3d 573 (5th Cir. 2015) ........................................................57

John Wiley & Sons, Inc. v. DRK Photo,
    882 F.3d 394 (2d Cir. 2018) ........................................................19

Kamen v. Kemper Fin. Servs.,
    500 U.S. 90 (1991).......................................................................47

Kelly-Brown v. Winfrey,
    717 F.3d 295 (2d Cir. 2013) .........................................................48

Killer Joe Nev., LLC v. Doe,
    807 F.3d 908 (8th Cir. 2005) .........................................................57

Kirtsaeng v. John Wiley & Sons, Inc.,
    579 U.S. 197 (2016)............................................ 57, 61, 65, 66

Klier v. Elf Atochem N. Am., Inc.,
    658 F.3d 468 (5th Cir. 2011) .................................................. 54, 55

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,
    28 F.3d 1388 (5th Cir. 1994) ........................................................43

Los Angeles News Serv. V. KCAL-TV Channel 9,
    108 F.3d 1119 (9th Cir. 1997) ......................................................18

Luv N' Care, Ltd. v. Groupo Rimar,
    844 F.3d 442 (5th Cir. 2016) ........................................................52

McAfee v. Boczar,
    738 F.3d 81 (4th Cir. 2013) ..........................................................70

Metabolife Int'l, Inc. v. Wornick,
    2000 U.S. Dist. LEXIS 23742 (S.D. Cal. Jan. 13, 2000) ..............58

Neitzke v. Williams,
    490 U.S. 319 (1989).....................................................................64

Nesom v. Brown & Root, Inc.,
    987 F.2d 1188 (5th Cir. 1993) ......................................................52

Opticians Ass'n of Am. v. Indep. Opticians of Am.,
    920 F.2d 187 (3d Cir. 1990) .........................................................49

Ramirez v. Nichols,
    496 F. App'x 383 (5th Cir. 2017)..................................................14

Sinclair v. Am. Media, Inc.,
    2018 U.S. Dist. LEXIS 154116 (S.D.N.Y. Sept. 7, 2018) ...........18

Sony Corp. of Am. v. Universal City Studios, Inc.,
    464 U.S. 417 (1984).....................................................................41

Southern Co. v. Dauben Inc.,
    324 F. App'x 309 (5th Cir. 2009) .................................................48

Springboards to Educ. v. Houston Indep. Sch. Dist.,
    912 F.3d 805 (5th Cir. 2019) .........................................................14

The Trade-Mark Cases,
    100 U.S. 82 (1879).......................................................................42

Thompson v. Runnels,
    705 F.3d 1089 (9th Cir. 2013) .....................................................47

Tresóna Multimedia, LLC v. Burbank High School Vocal Music Ass'n,
    953 F.3d 638 (9th Cir. 2020) .......................................................19

United Nat. Foods, Inc. v. NLRB,
    66 F.4th 536 (5th Cir. 2023) ........................................................45

United States v. Sineneng-Smith,
    140 S. Ct. 1575 (2020)..................................................................45

Veeck v. S. Bldg. Code Cong. Int'l,
    293 F.3d 791 (5th Cir. 2002) .......................................................14

Virgin Records Am. Inc. v. Thompson,
    512 F.3d 724 (5th Cir. 2008) .......................................................14

Warner Bros. Entm't, Inc. v. X One X Prods.,
    840 F.3d 971 (8th Cir. 2016) .......................................................42

Yamashita v. Scholastic Inc.,
    936 F.3d 98 (2d Cir. 2019) ..........................................................19

**Statutes**

15 U.S.C. §1115................................................................... 42, 47, 48

17 U.S.C. § 106 .........................................................................34

17 U.S.C. § 107 ............................... 4, 15, 17, 31, 32, 34, 37, 42

17 U.S.C. § 410 .........................................................................63

17 U.S.C. § 504 .........................................................................62

17 U.S.C. § 505 ................................................................... 52, 57

**Rules**

Fed. R. Civ. P. 56(a)..................................................................................40

**Treatises**

NIMMER ON COPYRIGHT (2023)................................................. 30, 57, 58

# JURISDICTIONAL STATEMENT[1]

(A)    This action asserted copyright claims, <u>ROA.15</u>¶31-16¶36, 78¶¶32-37, and federal trademark claims, <u>ROA.16</u>¶37-17¶44, 78¶38-80¶45.   The District Court had exclusive original jurisdiction over the copyright claims.  <u>See</u> <u>28 U.S.C. §§1331</u> (federal-question jurisdiction), 1338(a) (exclusively federal copyright jurisdiction).  It had original jurisdiction over the trademark claims.  <u>See</u> <u>15 U.S.C. §1121(a)</u> (trademark jurisdiction "without regard to amount in controversy"); <u>28 U.S.C. §§1331</u> (federal-question jurisdiction), 1338(a) (non-exclusive trademark jurisdiction).

(B)    The District Court entered final judgment on the merits.  <u>ROA.2221</u> (entry of judgment), <u>see</u> <u>Fed. R. App. P. 4(a)(7)(ii)</u> (defining entry where separate document required).   It also entered a final collateral order on copyright fees. <u>ROA.2208-2220</u> (copyright-fees order), <u>see</u> Fed. R. App. P 4(a)(7)(i) (defining entry where separate document *not* required).  This Court has appellate jurisdiction over both.  <u>See</u> <u>28 U.S.C. §1291</u> (appellate jurisdiction over "all final decisions of the district courts").

---

[1] Throughout this Brief, all emphasis is added unless otherwise indicated. Internal quotation marks, citations, and brackets are frequently removed for ease of reading.   All statutory citations are to Title 17 of United States Code unless otherwise indicated.

1

(C)    The District Court entered final judgment on March 27, 2023, ROA.2221 (entry of judgment), and entered a final collateral order on fees that same day, ROA.2208-2220 (copyright-fees order).    Twenty-eight days later, on April 24, 2023, the notice of appeal was filed.    ROA.2222.    The appeal is timely. See 28 U.S.C. §2107(a); Fed. R. App. P. 4(a)(1)(A).    Fourteen days later, on May 8, 2023, a notice of cross-appeal was filed.    ROA.2227.    The cross-appeal is timely.    See Fed. R. App. P. 4(a)(3) (requiring filing notice of cross-appeal within ordinary timeframe or "14 days" of the original notice of appeal, "whichever period ends later").

(D)    The District Court disposed of all claims by order, ROA.1180-1190, entered judgment, ROA.2221, and issued a final collateral order as to copyright fee-shifting, ROA.2208-2220.    This appeal arises from a final judgment that disposed of all claims.

## RELEVANT STATUTORY PROVISIONS

I.    **15 U.S.C. § 1115.**

Section 1115 of Title 15 of United States Code reads, in pertinent part, as

follows:

**§ 1115.  Registration on principal register as evidence of exclusive right to use mark; defenses**

[….]

**(b) Incontestability; defenses.**  To the extent that the right to use the registered mark has become incontestable under section 15, the registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce.  Such conclusive evidence shall relate to the exclusive right to use the mark on or in connection with the goods or services specified in the affidavit filed under the provisions of section 15, or in the renewal application filed under the provisions of section 9 if the goods or services specified in the renewal are fewer in number, subject to any conditions or limitations in the registration or in such affidavit or renewal application. Such conclusive evidence of the right to use the registered mark shall be subject to proof of infringement as defined in section 32, and shall be subject to the following defenses or defects:

[….]

> **(4)** That the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin;

[….]

3

## II.    <u>17 U.S.C. § 107</u>.

Section 107 of Title 17 of United States Code reads as follows:

### § 107.  Limitations on exclusive rights: Fair use

Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

> **(1)** the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

> **(2)** the nature of the copyrighted work;

> **(3)** the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

> **(4)** the effect of the use upon the potential market for or value of the copyrighted work.

The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors.

**III.**  **17 U.S.C. § 505.**

Section 505 of Title 17 of United States Code reads as follows:

### § 505.  Remedies for infringement: Costs and attorney's fees

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

## STATEMENT OF ISSUES

**I.    COPYRIGHT FAIR USE**

Whether the District Court erred in its analysis of and overall balancing of the copyright fair-use factors, especially the first and the fourth factors, with the following sub-issues:

**A.** First Factor: Whether the District Court properly weighed the extent of commerciality of Defendants' use; whether Defendants made a showing of good faith when they never asked for permission or availed themselves of free alternatives; whether the unchanged replicas were transformative within the meaning of the Supreme Court's recent <u>Warhol</u> decision.

**B.** Second Factor: Whether the District Court sufficiently weighed the extent of Ms. Keck's success on the second factor.

**C.** Third Factor: Whether the District Court sufficiently weighed the extent of Ms. Keck's success on the third factor.

**D.** Fourth Factor: Whether the District Court improperly relieved Defendants of their burden of proof; whether Ms. Keck's evidence on sales of derivatives by Defendants shows a harm to her derivative product and licensing markets; whether the District Court contravened appellate authority on the volume of infringement.

**II.**     **TRADEMARK FAIR USE**

**A.**     Whether the District Court erred by ruling on the trademark claims without
prior notice to the parties—granting relief that was not requested in
Defendants' motion for summary judgment and on issues that were never
briefed.

**B.**     Whether the District Court erred in applying copyright fair-use analysis to
trademark claims and, whether, under the correct trademark standard,
summary judgment should have been granted.

**C.**     Whether, operating under the assumption *arguendo* that copyright fair-use
analysis can apply to trademark claims, the District Court should still be
reversed on the trademark claims because the District Court erred on the
copyright fair-use analysis.

### III.   COPYRIGHT FEE-SHIFTING

**A.**    If this Court reverses or vacates the grant of summary judgment on copyright that is the basis for Defendants' prevailing-party status, whether this Court should also vacate the copyright-fee award predicated upon prevailing-party status.

**B.**    Whether (i) the District Court applied incorrect copyright fee standards below and (ii) whether the District Court incorrectly applied the <u>Fogerty</u> fee factors below.

**C.**    Whether the District Court committed clear error when it construed Ms. Keck as only objecting to $17,000 in the requested fee amount when her objections were much broader.

## STATEMENT OF THE CASE

### I.    THE UNAUTHORIZED USES

Defendant Jacqueline Kenneally (née Pelosi) is the sole proprietor and 100% owner of Defendant Mix Creative Learning Center, LLC (collectively "Defendants").  ROA.602¶2.

While Defendants had operated art classes since 2005, ROA.602¶2-603¶4, in 2020, Defendants expanded into e-commerce during the pandemic, ROA.603¶4. To prepare their e-commerce products for sale, Defendants would make unauthorized downloads of copyrighted images, ROA.603¶6c; make unauthorized uploads of these images onto Defendants' websites, ROA.604¶6e; and also sell infringing physical copies of the downloaded images without seeking permission from the artist in question, ROA.604¶h-605¶j.

Defendants did this to Plaintiff Michel Keck's artworks—again without contacting her, offering a license, or requesting permission before undertaking the "business" of online selling of her materials—incorporating wholesale her copyrighted materials into their products.  ROA.605¶8-606¶10.  This infringement only ceased—and not just for Ms. Keck's works—when Ms. Keck took action to protect her property rights.  ROA.606¶11.

Defendants were active on social media, such as Instagram.  See ROA.585-594 (Instagram screenshots).

Although Defendants have "communicated and engaged with artists around the world[,]" Defendants never reached out to ask Ms. Keck for permission, not even as a courtesy.  See ROA.607¶16.

The record contains extensive images of the infringing products and online posts.  E.g., ROA.519-522.  These online posts by Defendants compete with Ms. Keck's online store.  See ROA.623¶3 ("online gallery"); ROA678 (Google Image results).  High-resolution images of Ms. Keck's works can be found in the record as well.  E.g., ROA.627-632.

## II.   THE PROCEEDINGS BELOW

Ms. Keck asserted trademark claims and copyright claims in the District Court.  Dkt.1 (compl.); Dkt. 21 (1st am. compl.); Dkt. 43 (answer); Dkt. 44 (1st am. answer).  After discovery, the Parties submitted cross-motions for summary judgment that focused exclusively on the copyright claims.

Ms. Keck sought summary judgment on Defendants' copyright liability, making out a prima facie case of copyright infingement.  Dkt. 50 (Keck MSJ); 53 (Defendants' MSJ opp.); 56 (Keck MSJ reply).  For their part, Defendants sought summary judgment on copyright fair use and willful infringement—without briefing or discussing the trademark claims.  Dkt. 51 (Defendants' PMSJ); 52 (Keck opp.); 57 (Defendants' PMSJ reply).

The District Court granted summary judgment in favor of Defendants both on copyright fair use and, *sua sponte*, on trademark fair use—applying copyright fair-use standards to trademark claims.  Dkt. 60.  Then, Defendants moved for copyright fee-shifting and sanctions.  Dkt. 61 (Defendants' motion); 65 (Keck opp.); 66 (Defendants' reply).  The District Court denied sanctions but awarded over $100,000 in copyright fee-shifting, Dkt. 72, and entered final judgment, Dkt. 73.  Ms. Keck appealed, Dkt. 74, and Defendants cross-appealed the denial of sanctions, Dkt. 76.

## SUMMARY OF ARGUMENT

I.  The District Court erred in its copyright fair-use analysis, especially on the two most important factors, the first and the fourth.  On the first, the District Court discounted the significant degree of commerciality; distorted the meaning of the term of art "transformative" as clarified by the Supreme Court in <u>Warhol</u>; and ignored record evidence demonstrating a lack of Defendants' good faith.  On the fourth factor, the District Court ignored Defendants' lack of evidence on *their* affirmative defense; ignored evidence demonstrating harm to derivative markets; and disregarded Supreme Court precedent requiring it to consider the market effects if Defendants' infringing uses became widespread.

II.  The District Court erred on granting summary judgment on the trademark claims.  First, Defendants partial motion for summary judgment did not even raise or address the trademark claims, so the District Court should not have ruled upon them.  Second, it was error to apply *copyright* law's fair-use standard and analysis to determine *trademark* law's fair use-defense—as they are governed by separate statutes and separate legal standards. Under the correct *trademark* legal standards that should have been applied to *trademark* claims, there is no trademark fair use here.  Third, insofar as the District Court applied copyright fair-use standards, it erred on those standards, as discussed in Argument Section I.

III. This Court only needs to reach the copyright-fee issues if it affirms the copyright fair-use decision on the merits.  If it does reach the copyright-fee issues, the District Court should be vacated for applying an incorrect legal standard and reversed because its application of the <u>Fogerty</u> fee factors included numerous clear legal and factual errors.  And, even if this Court affirms on the fees, it should remit the amount awarded in light of the fact that the District Court awarded fees for time spent litigating defenses and issues for which Ms. Keck prevailed.

## STANDARDS OF REVIEW

The District Court's summary-judgment ruling is reviewed de novo, with factual inferences in favor of reversal.  See Argument Section I-II, *infra*.  The District Court's copyright-fees ruling is reviewed for abuse of discretion.  See Argument Section III, *infra*.

The District Court's order granting summary judgment is reviewed de novo. E.g., Veeck v. S. Bldg. Code Cong. Int'l, 293 F.3d 791, 794 n.2 (5th Cir. 2002) (en banc) ("We review the district court's grant of summary judgment de novo. […] [A]ll justifiable inferences will be made in the nonmoving party's favor.") (copyright case); BWP Media United States v. T & S Software Assocs., 852 F.3d 436, 438 (5th Cir. 2017) ("We review a grant of summary judgment *de novo*, applying the same standard as the district court.") (copyright case); Springboards to Educ. v. Houston Indep. Sch. Dist., 912 F.3d 805, 811 (5th Cir. 2019) (same standard in trademark case).

The District Court's copyright-fee order is reviewed for abuse of discretion. E.g., Virgin Records Am. Inc. v. Thompson, 512 F.3d 724, 725 (5th Cir. 2008) ("This court reviews a district court's refusal to award attorney's fees in a copyright infringement case for an abuse of discretion."); Ramirez v. Nichols, 496 F. App'x 383, 386 (5th Cir. 2017) (same when "fees awarded").

14

# ARGUMENT

## I.    THE DISTRICT COURT ERRED ON THE COPYRIGHT CLAIMS.

The District Court granted summary judgment on Ms. Keck's copyright-infringement claims based upon the affirmative defense of copyright fair use, codified at 17 U.S.C. §107.  ROA.1180-1190.  As to copyright's four fair-use factors, the District Court concluded that factor one weighed "slightly in favor of Defendants[,]" ROA.1188; that factors two and three supported Ms. Keck, ROA.1188; and that factor four "weighs in favor of Defendants"—ultimately concluding that the first and fourth factors outweighed the second and third here, ROA.1190.

Yet, the District Court should be reversed.  It erred as to the first factor in several ways, especially given the Supreme Court's recent clarification on the first factor in the Warhol decision.  See Section I.A, *infra*.  The second and third factors plainly support Ms. Keck—and the District Court acknowledged that they did.  See Section I.B-I.C, *infra*.

Finally, the analysis below of the fourth factor ruled for Defendants—overlooking that Defendants presented no evidence despite their burden of proof; ignoring evidence of harm to Ms. Keck's derivative markets; and directly contravening Supreme Court instructions on how to conduct the fourth factor's market analysis.  See Section I.D, *infra*.  This Court should reverse.

15

**A.**    **The District Court erred on the first nature-of-the-use factor because these uses were highly commercial, non-transformative, and were not made in good faith.**

The first fair-use factor examines "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith, 143 S. Ct. at 1274.

Below, the District Court held that "the first factor leans *slightly* in favor of" fair use because it determined that the use was "commercial" but was also "transformative" and made in good faith. ROA.1188; see ROA.1185-1188. Yet, the District Court committed three errors:

1.    The District Court did not properly weigh the significant degree of *commerciality* of Defendants' selling of Ms. Keck's artwork as Defendants' own products on their e-commerce site.

2.    The District Court wrongly held that the use was *transformative*, even though Defendants made no changes to the works, in contravention of the Supreme Court's recent Warhol decision.

3.    The District Court incorrectly held that Defendants acted in *good faith*, even though they extensively researched Ms. Keck but never bothered to contact her to ask for permission.

Properly applied, the first factor weighs decidedly against fair use here.

***First***, there's commerciality.

Warhol clarified that commerciality is an element of the first fair-use factor, and that it must be "weighed against" transformativness and the other factors. Warhol, 143 S. Ct. at 1263.

As an initial matter, the District Court improperly discounted the degree of commerciality based upon Defendants' low sales volume.  ROA.2208 ("revenue of $240").  Notably, however, the statute speaks of the "commercial ***nature***" of the use—not the infringer's volume of actual sales.  17 U.S.C. §107(1).  The fact that an infringer's product doesn't sell particularly well does not undermine the "commercial *nature*" of the use.

Also, commercially selling *someone else's* copyrighted works online, as happened here, is a far cry from a mere case of online posting of an image or photograph of quoted text.  Cf., e.g., Bell v. Eagle Mt. Saginaw Indep. Sch. Dist., 27 F.4th 313, 322 (5th Cir. 2022) (suit against school district for "posting a one-page excerpt of Bell's book on Twitter").

Here, it's far more commercial.  Defendants sold Keck's artwork as part of Defendants' own product, on Defendants' e-commerce website-store.  Defendants' separate in-person, art-class activities are *not* at issue in this lawsuit.  And, notably, what is at issue—Defendants' online sales—were not restricted to educators or otherwise limited for educational uses.

Selling another person's artwork as your own product on a restriction-free e-commerce website is about as commercial as it gets—even if the infringer's product doesn't sell well.

The pertinent question for fair use is "whether the user stands to profit from exploitation of the copyrighted material *without paying the customary price*." Bell, 27 F.4th at 321-322. After all, "[t]he fair use doctrine is ***not* a license for corporate theft**" anytime "the underlying work contains material of possible public importance." Sinclair v. Am. Media, Inc., 2018 U.S. Dist. LEXIS 154116, *12 (S.D.N.Y. Sept. 7, 2018).

Rather, copyright law "insist[s] that, just as artists must pay for their paint, canvas, [*etc.*,]" if Defendants choose to use copyrighted expression, "they must pay for the material as well." See Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith, 11 F.4th 26, 52 (2d Cir. 2021). Here, Defendants didn't do that—or even attempt to ask permission—simply preferring to "purloin[] for free" instead of fairly "offering a licensing fee." See Los Angeles News Serv. V. KCAL-TV Channel 9, 108 F.3d 1119, 1122 (9th Cir. 1997).

Notably, commercial suppliers of educational materials *do* pay for licenses. They don't—and shouldn't—scrawl the Internet, take what they want, make it part of their products, all the while ignoring that creator's licensing page. See Michel Keck Fine Art, "Wholesale & Licensing" (licensing webpage).

18

Indeed, one reason commerciality is so important to a fair-use analysis is that commercial sellers are expected to get a license, rather than undermine preexisting copyright markets (which is what a fair-use ruling does to preexisting markets). There *are* such markets for educational uses. E.g., John Wiley & Sons, Inc. v. DRK Photo, 882 F.3d 394, 399 (2d Cir. 2018) ("stock photographs available for licensing […by] textbook publishers"); Yamashita v. Scholastic Inc., 936 F.3d 98, 100 (2d Cir. 2019) (case about scope of copyright licenses held by "publisher of children's book and textbooks").

A textbook publisher, for example, can't simply print photos without licensing. Cf. Brammer v. Violent Hues Prods., LLC, 922 F.3d 255, 265 (4th Cir. 2019) ("When a commercial enterprise seeks to illustrate its website, it is customary to buy licenses for use of appropriate stock imagery.").

Moreover, suing an e-commerce seller of infringing educational products that incorporate an artist's entire work is drastically different than suing a teacher, band leader, or booster club for taking snippets. Cf. Bell, 27 F.4th at 326 (5th Cir.) ("serial litigant" with a "long history of suing public institutions and nonprofit organizations over *de minimis* uses of his work"); Tresóna Multimedia, LLC v. Burbank High School Vocal Music Ass'n, 953 F.3d 638, 642 (9th Cir. 2020) (suit against high-school "vocal music director[,]" parent "Boosters Club[,]" and "several individual Boosters Club parents").

19

The District Court, distracted partly by the modest sales of these particular infringers, failed to properly credit just how commercial Defendants' unauthorized uses were here—*i.e.*, very significant commercial use that was selling Keck's works as Defendants' products.  Indeed, there's no indication Defendants wouldn't have sold as many infringing copies as were ordered prior to being caught red-handed.  Their infringement would have continued unabated.

Regardless, the low sales-volume and tangential relation to education does not mean these uses were not of a highly "commercial ***nature***"—highly commercial e-commerce uses.  They were.  Thus, the commerciality element of the first factor weighs strongly *against* fair use.

***Second***, the District Court misapplied the term of art "transformative" in determining that Defendants' use—which copied Keck's work completely and did *not* change the work—was transformative.

As an initial matter, the District Court relied upon two cases from the Southern District of New York that predate both the Supreme Court's 2023 Warhol decision and the Second Circuit's 2021 Warhol decision.  Because both the Second Circuit and the Supreme Court have subsequently clarified the meaning of transformative use, the District Court was importing outdated trial-court opinions to this Circuit—opinions at odds with the subsequent legal clarification.

For example, the District Court described Defendants' use as "source material" in commercial sales. ROA.1186. Yet, the Second Circuit subsequently clarified that just adding "new expression to its *source material*" is *not* meaningful transformation. Warhol, 11 F.4th at 38-39 (2d Cir. 2021).

More importantly, the Supreme Court's Warhol clarified that transformative analysis turns on a laser-focused analysis of the "specific use" in question. Warhol, 143 S.Ct. at 1264 ("specific use at issue"), 1273 ("the specific use"); 1281 ("[N]ot all of Warhol's works, *nor all uses of them*, give rise to the same fair use analysis.").

In the Supreme Court's view, the first-factor analysis of transformation does *not* turn on downstream educational possibilities and doesn't turn on the overall nature of the defendant (teaching art classes), but rather turns "on the specific use alleged to infringe"—which here is the online, e-commerce sales of copies of Keck's entire works. See id. at 1278 n.10.

Indeed, Defendants' stated purpose of doing this infringement to teach children does not determine the transformative analysis. See id. at 1284 ("Nor does the subjective intent of the user (or the subjective interpretation of a court) determine the purpose of the use.") Warhol makes clear, however, that "whether a work is transformative *cannot* turn merely on the stated or perceived intent of the" Defendants. See id.

Yet, the District Court did just that.

It relied on Defendants' subjective purpose "to demonstrate a specific style of art" as justification for a transformative-fair-use holding. ROA.1108. But that subjective purpose is _not_ part of the analysis. And, as a pragmatic matter, selling Keck's artwork as a product on Defendants' e-commerce website was selling without restriction to anyone who wanted to purchase the infringing artwork for any purpose—educational or not.

By contrast, suppose that a teacher had purchased a kit from Defendants. That downstream teacher who uses Defendants' kit in a classroom environment might well be making a fair use—but that's a distinct "specific use at issue[.]" Warhol, 143 S.Ct. at 1264. Defendants' commercial selling of products online, even purportedly educational products, on an unrestricted e-commerce website is not transformative but rather the purveying of a potential substitute. Id. at 1274 ("the first factor relates to the problem of substitution").

Finally, a comparison of Defendants' changes (or lack of changes) to Keck's artwork and the non-transformative changes made by Andy Warhol to the Prince photos at issue in Warhol reveals the infirmities in Defendants' transformativeness argument. In Warhol, Andy Warhol made significant and striking changes to the original photo—adding colors, distorting, silk-screening, *etc.*, to create his signature look. Id. at 1287.

Even with those transformations, the use in <u>Warhol</u> *still* wasn't transformative. <u>Id.</u> at 1266-1268. So too here. Here, Defendants simply copied Keck's artwork whole and did not change her expression, but merely added new expression around it. That's not transformative. And a comparison between the changes here and the changes made in <u>Warhol</u>, reveal that neither is transformative within the meaning of that term of art in copyright law.

<u>***Third***</u>, the District Court erred in finding that Defendants had acted in good faith.

The District Court also considered whether Defendants acted in good faith as part of the first factor. <u>ROA.1185</u> (citing <u>Campbell</u>, <u>510 U.S. at 579</u>; <u>Bell</u>, <u>27 F.4th at 322-323</u>). Yet, the District Court erred in finding good faith. See <u>ROA 1187</u>. Indeed, this summary-judgment record raises more questions than answers about *why* Defendants didn't attempt to ask permission or use any of the freely available alternative artwork online.

The District Court relied upon this Court's <u>Bell</u> decision, but <u>Bell</u> is highly distinguishable. <u>Bell</u> involved a school being sued by a copyright troll who had "a long history of suing public institutions and nonprofit organizations over *de minimis* uses of his work." <u>Bell</u>, <u>27 F.4th at 326</u>. The school had merely *posted* an inspirational "one-page excerpt of Bell's book on Twitter." <u>Id.</u> at 322.

By stark contrast, Keck found her artwork being used on a for-profit, e-commerce website selling her artwork as a product. Thus, <u>Bell</u> is highly inapposite: the school district there wasn't trying to build an e-commerce product line through unauthorized use of copyrighted works. And, that's important to a good-faith finding because the amount of due diligence one might reasonably expect for wholesale incorporation of a copyrighted work into a for-sale product is much more than the amount one might reasonably expect for quoting a single page of a book on a school website.

As to good faith, Defendants never bothered asking for permission. Here, Defendants pointed out that they diligently tracked down "biographical information about the artist[,]" <u>ROA.604</u>¶6e, and, specifically, Defendants searched out biographical information by tracking down "the artist's publicly available *website*." <u>ROA.604</u>¶6e. Yet, while there, Defendants couldn't be bothered to reach out to the artist.

The question then arises *why* Defendants didn't simply reach out to the artist to ask for permission? This is an especially pertinent question because a casual perusal of Keck's website would show that she would be interested in licensing her works—had she been asked. <u>See</u> Michel Keck Fine Art, "<u>Wholesale & Licensing</u>" (licensing webpage).

The failure to attempt to contact Keck regarding the use indicates a lack of good faith. The lack of an attempt to contact Keck is especially probative because the record reveals Defendants tech savviness and significant online research when trying to *take* an artists' work. ROA.585-594 (Instagram screenshots), ROA.607¶16 (online activities). It also demonstrates Defendants regularly *contacted artists*—just not Keck for permission. ROA.607¶16.

Indeed, when it came to showing a modicum of respect for the very artist whose work was intended to fuel Defendants' online business, Defendants didn't lift a finger. They didn't bother sending Keck an email; didn't bother leaving a message on Keck's website; didn't bother attempting a social-media contact. ROA.602-607. By contrast, in Campbell, the defendants there had tried to seek "permission" for their parody. Campbell, 510 U.S. at 572. That's what good faith would have looked like.

"The bottom line" is that, here, Defendants made unauthorized commercial uses "without seeking permission[.]" See Dr. Seuss Enters., L.P. v. ComicMix LLC, 983 F.3d 443, 461 (9th Cir. 2020); Warhol, 11 F.4th at 44 (2d Cir. 2021) ("exploit it without [...] permission."). Given the intended commercial exploitation to start a product line, not reaching out indicates a lack of good faith.

Defendants' failure to contact Ms. Keck was not fair to her rights. That's not good faith; not fair use; and not equitable treatment.

25

Moreover, it's unclear why Defendants couldn't have used freely available artworks to accomplish their purpose.

The "first factor also relates to the justification for the use." Warhol, 143 S. Ct. at 1276. And, the question "remains how powerful, or persuasive, is the justification, because the court must weigh the strength of the secondary user's justification against factors favoring the copyright owner." Id. at 1277. Here it's unclear why Defendants didn't simply use famous works of long-deceased artists that are comfortably in the public domain.

Using public-domain artwork would have to achieved Defendants' stated purposes of teaching art "styles" to children—*without* infringing. See ROA.602-607. For example, Defendants could have simply used famous works of long deceased artists—Van Gogh, Manet, El Greco, Caravaggio, *etc.* Or, Defendants could have used any of the free licenses available online such as those provided at Creative Commons. See Brammer, 922 F.3d at 268 ("could just as easily have accomplished its goal of depicting Adams Morgan by taking its own photograph or finding an image under free license").

Simply put, Defendants did not have a good-faith justification for taking Ms. Keck's work rather than any of the freely available alternatives to achieve their commercial purposes. There is no justification for using Keck's work—as opposed to public-domain works or freely-licensed works.

* * * * *

Here, Defendants made a highly commercial use despite their low sales volume; made no transformation; made no justification for their use of Ms. Keck's work in particular as opposed to freely-licensed works or public-domain works; and showed a lack of good faith by perusing Keck's website without bothering to reach out to her.

In light of these considerations, the District Court's first-factor analysis should be reversed.  Properly applied, this first fair-use factor weighs strongly against fair use.

**B.    The District Court correctly held that the second nature-of-the-work factor supports Ms. Keck.**

The second factor examines "the nature of the copyrighted work[.]"  Warhol, 143 S. Ct. at 1274.  To evaluate this factor the law draws a creative-versus-factual distinction.  See Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 586 (1994) ("contrasting creative works with bare factual compilations").

Creative and artistic types of work, like Keck's artistic works at issue here, receive robust protections.  See, e.g., Brammer, 922 F.3d at 267 ("[C]reative, aesthetic expressions of a scene or image […] have long received thick copyright protection.").  By contrast, factual works like "bare factual compilations" such as databases comprised of pre-made factual information receive thin protection.  E.g., Campbell, 510 U.S. at 586.  Under this distinction, "fair use is more likely to be found in factual works than in fictional works."  E.g., Bell, 27 F.4th at 323 (5th Cir.).

Here, Keck's original paintings are plainly creative, rather than factual works within the meaning of copyright jurisprudence.  That weighs against fair use.  And, because Defendants copied her work for their expression and expressive elements that also weighs against fair use.  ROA.603¶6(c); ROA.604¶6(e); see Bell, 27 F.4th 313, 323 (5th Cir. 2022) ("[W]e consider whether the work has been appropriated for its 'expressive elements,' rather than to disseminate 'the underlying facts.'").

Accordingly, the second factor weighs decidedly against fees here.

**C.    The District Court correctly held that the third amount-taken factor supports Ms. Keck.**

The third factor examines "the amount and substantiality of the portion used in relation to the copyrighted work as a whole."  Warhol, 143 S. Ct. at 1274 (2023).  Below, the District Court properly found that this factor weighed *against* fair use.  ROA.1188.

This factor demands "a determination of not just quantitative, but also qualitative substantiality."  4 NIMMER ON COPYRIGHT §13.05[A][3] (2022); see also Harper & Row, Publrs. v. Nation Enters., 471 U.S. 539, 569 (1985) (unfair to take a mere "300 words" out of 200,000 words in book).  And, naturally for a factor that considers the amount of the copyrighted work taken, "copying an *entire* work militates *against* a finding of fair use."  A&M Records v. Napster, Inc., 239 F.3d 1004, 1016 (9th Cir. 2001).

Here, there's no serious dispute that this factor weighs against fair use.  ROA.1188 ("Defendants copied six **complete pieces**" of Keck's copyrighted works.); ROA.605¶9 (same).

Defendants' complete copying of Keck's artwork means that the third fair-use factor also weighs against fair use here.

**D.    The District Court erred on the fourth market-impact factor because Defendants failed to meet their burden of proof while Ms. Keck showed evidence of harm to the works' derivative markets.**

Fair use's fourth factor examines "the effect of the use upon the potential market[.]"  Warhol, 143 S. Ct. at 1274 (quoting §107(4)).  Notably, this "last factor is undoubtedly the *single most important element* of fair use."  Harper & Row, 471 U.S. at 566.

Below, the District Court held this factor favored fair use.  ROA.1188-1190. Yet its analysis was plagued by three critical errors:

1. The District Court did not identify any *evidence* proffered by Defendants on their affirmative defense to meet their *burden of proof* regarding impact on potential markets.

2. The District Court failed to credit Keck's evidence of harm to markets for her works, specifically evidence of market harm to the markets for *derivative uses* of her works.

3. The District Court failed to examine the effects upon the market for the *works* that would result if Defendants' infringing conduct were to become unrestricted and widespread.

For all three reasons, the District Court erred on the fourth factor.

31

*First*, it's important to stress that the Supreme Court and other Circuits "have unequivocally placed the *burden of **proof*** on the proponent of the affirmative defense of fair use." E.g., Dr. Seuss Enters., L.P. v. ComicMix LLC, 983 F.3d 443, 459 (9th Cir. 2020). Because "fair use is an affirmative defense, its proponent would have difficulty carrying the burden of demonstrating fair use without favorable ***evidence** about relevant markets*." Campbell, 510 U.S. at 590; Harper & Row, 471 U.S. at 561 (same).

Here, that's a basis for reversal. The summary judgment order doesn't identify any such *evidence* put forth by Defendants. Instead, the District Court simply engaged in unsupported speculation. ROA.1189 ("hard for this Court to imagine"); ROA.1190 ("would likely, if anything, increase her name recognition"). That's not evidence. See ROA.403-404.

And, even if the District Court's speculation about "name recognition" were true, "name recognition" for the artist (Ms. Keck) simply does not speak to the statute's command to evaluate the "market for or value ***of the copyrighted work***." 17 U.S.C. §107(4); Warhol, 143 S. Ct. at 1274. Defendants failed to meet their burden of proof—a burden to provide *evidence*—demonstrating why their use wouldn't have disrupted potential markets for these specific *works*. See ROA.403-404; RO. 1188-1190. That alone should have precluded defense-side summary judgment below.

Critically, Defendants' failure to proffer evidence on this factor is dispositive, even if the District Court believed the first factor weighed in favor of fair use. Indeed, in <u>Campbell</u>, the Supreme Court stressed the need to examine the market effects under the fourth factor ***even if*** a defendant's use is transformative under the first. The Supreme Court explained:

> [I]t is impossible to deal with the fourth factor except by recognizing that **a silent record on an important factor bearing on fair use *disentitled* the proponent of the defense, [Defendant] to summary judgment**. The evidentiary hole will doubtless be plugged ***on remand***.

<u>Campbell</u>, <u>510 U.S. at 594</u>.; <u>cf.</u> <u>Warhol</u>, <u>143 S. Ct. at 1282</u> (discussing proper reading of <u>Campbell</u>).

The lack of Defendants' evidence on the market impacts should have "**<u>disentitled</u>**" Defendants to summary judgment on that basis alone. Here, Defendants' failure to satisfy their burden of proof should have been a non-starter as to the grant of summary judgment.

***Second***, the District Court ignored ***<u>Keck's</u>*** evidence that there was market harm—specifically market harm to the derivative markets for her works. <u>ROA.1188-1190</u>; <u>ROA.606</u>¶10. Courts are obligated to examine both direct and derivative markets for the work when conducting this fourth-factor analysis. <u>Harper</u>, <u>470 U.S. at 568</u> (The fourth-factor "inquiry ***<u>must</u>*** take account not only of harm to the original but also of ***harm to the market for derivative works***.").

A fourth-factor analysis must "address a crucial right for a copyright holder—*the derivative works market*." Dr. Seuss Enters, 983 F.3d at 460 (citing §106(2)'s derivative right); cf. Warhol, 143 S. Ct. at 1264 ("Otherwise, 'transformative use' would swallow the copyright owner's exclusive right to prepare derivative works").

Here, the record indicates such a derivative market—*i.e.*, Defendants' own sales for derivative uses of Keck's artwork. ROA.2208 ("sold [] six kits"); ROA.606¶10. Although the District Court myopically focused on the low sales volume ("$240"), the District Court overlooked that these sales were concrete record evidence of a derivative market for Keck's works.

That too militates the fourth factor against fair use. After all, Ms. Keck has an exclusive statutory right to either license to someone the right to prepare craft kits off her artworks or to engage in direct sales of a craft kit herself. See §106(2). As such, the record evidence of sales shows that Defendants sales were substituting for Keck's derivative markets. The District Court erred when it failed to credit this harm to the markets for Keck's works.

**_Third_**, the District Court erroneously resisted the Supreme Court's and the statute's command to examine "the *potential* market" for the copyrighted work. See Warhol, 143 S. Ct. at 1274 (quoting §107(4)).

34

Below, Keck cited authority explaining that this fourth-factor analysis requires the court to "consider not just Defendants' actual impact, but the impact" that such conduct would have if it were to become "unrestricted and widespread[.]" ROA.1189. Yet, instead of engaging that analysis, the District Court continued to harp on Defendants' low sales volume. ROA.1189 ("sold four kits [] for a total of $160"). That missed the mark.

After all, the operative question is whether "***widespread*** use of the work in the same infringing fashion" would harm the relevant markets. Bell, 27 F.4th at 324 (5th Cir.) (citing Campbell, 510 U.S. at 590). That's because, per Harper & Row, "[i]solated instances of minor infringements, when multiplied many times, become in the aggregate a major inroad on copyright that *must* be prevented." 471 U.S. at 569. And, Harper's 1985 concern about unauthorized uses multiplying is even more pronounced in our Digital Age where online infringing content could rapidly and easily spread—or go "viral."

Therefore, the District Court's focus on the fact that Defendants only sold four kits does not address what the market impact would be if there was "unrestricted and widespread conduct of the sort engaged in by" Defendants. See Warhol, 143 S. Ct. at 1272 n.3. Given that the Supreme Court has repeatedly required consideration of widespread use as part of the fourth-factor analysis, see, e.g., id., the District Court's focus on low sales volume was error.

In refusing to apply this black-letter doctrine on the fourth-factor analysis as established by repeated Supreme Court precedents across decades, e.g., Campbell, 510 U.S. at 590, the District Court relied upon its own policy views that examining the effects of Defendants' infringing conduct "too broadly would render any unauthorized [use] as harmful to the market[.] ROA.1189 n.3.

That concern, though understandable, is misplaced—and misunderstands the fourth-factor analysis.

The Supreme Court's focus on market **substitutions** readily assuages the District Court's concern because a widespread _substitute_ _will_ affect a potential market, but not all uses are substitutes for the original or a derivative. See Warhol, 143 S. Ct. at 1277 ("risk of **substitution** for the original _or licensed derivatives of it_"). The key insight that the District Court overlooked is that the fourth factor is examining the problem of substitutes.

For example, a book review is not a market substitute for a book. See id. at 1274 n.4. But see id. at 1276 n.7. The book review might affect the demand for the book, but is not a _substitute_ for the book. Nor is an explicit rap parody by 2 Live Crew a substitute for the saccharine, velvety crooning of Roy Orbinson. See Campbell, 510 U.S. at 593-594. Yet, in Harper, the New Republic's excerpt of 300 words in a news reporting article was a substitute for the derivative licensed uses. See 471 U.S. at 568.

Thus, the Supreme Court's consistent focus on the "problem of substitutes" (for not just originals but also derivatives) readily addresses the District Court's concern regarding the "usefulness of this fourth factor."   See ROA.1189 n.3. Accordingly, there was no need to deviate from the Supreme Court's clear instruction to examine the effects on the potential market "*if the challenged use should become widespread*[.]"  Harper, 471 U.S. at 541.

And, again, the District Court's passing speculation about "name recognition" for Keck is not helpful.   See ROA.1190 ("increase ***her*** name recognition").  The relevant inquiry under the fourth fair-use factor examines the "the effect of the use upon the potential market for or *value of the copyrighted **work***"—not the artist's name recognition.  §107(4).  Replacing market analysis with name-recognition analysis is textually unsupported.  And, ultimately, the canard that theft of intellectual property is actually good for the artist is a strikingly paternalistic view as to the unauthorized use of property rights.

\* \* \* \* \*

A proper fair-use analysis protects against "the problem of substitution— copyright's bête noire."  Warhol, 143 S. Ct. at 1274.  And, a proper fair-use analysis ensures that fair use respects an artist's exclusive derivative rights under §106(2). See Authors Guild v. Google, Inc., 804 F.3d 202, 216 n.18 (2d Cir. 2015) (Leval, J.).

Yet, the order below failed to serve those fundamental purposes because of the aforementioned three errors. Defendants failed to satisfy their burden of proof by failing to provide any evidence showing widespread sales of their products would not harm the direct and derivative markets for the works. By contrast, Keck and the record demonstrated harm to the derivative market.  And, the District Court failed to examine the effects of defendants conduct *if* such conduct became "widespread."

The District Court erred on the fourth factor.  Property applied, the fourth factor should have precluded summary judgment here, given Defendants' lack of evidence alone.  This Court should reverse.

## II.     THE DISTRICT COURT ERRED ON THE TRADEMARK CLAIMS.

Critically, this case did not just involve copyright-infringement claims, but also involved trademark claims.     Compare ROA.78¶¶32-37 (copyright) with ROA.78¶38-80¶45 (trademark).

The District Court summarily dismissed the trademark claims *sua sponte* in a single footnote that purported to apply copyright fair-use standards to the trademark claims.  ROA.1182 n.2.  The District Court's stated rationale was its erroneous belief that that the Parties had agreed to apply copyright fair-use standards to trademark claims.     ROA.1182 n.2.     But see ROA.2272:20-ROA.2273:12; ROA.2273:10-12 (THE COURT: "So I don't need to deal with something for the trademark?"  KECK'S COUNSEL: "Correct.").   The District Court erred.

Defendants didn't brief the trademark claims in their motion for summary judgment; Plaintiffs didn't either; and the District Court gave no notice of its intent to rule *sua sponte*, so the District Court should not have ruled upon the trademark claims at all.  See Section II.A, *infra*.  Furthermore, under the right trademark standard, there is no trademark fair use here.  See Section II.B, *infra*.  And, because the District Court erred on copyright fair use as discussed above, it still erred under its own preferred standards.  See Section II.C, *infra*.  Any one of these three errors, standing alone, is a sufficient basis to reverse.

39

**A.    The District Court should not have ruled on the trademark claims at all because Defendants did not raise or address the trademark claims in their motion for summary judgment.**

Below, Defendants moved for "***PARTIAL***" summary judgment identifying and litigating only the following issues: (A) "Enhanced Damages[,]" (B) "Fair Use[,]" and "Fees and Costs[.]"    ROA.388 (TOC), 395-401 (willfulness), ROA.401-404 (fair use), ROA.404 (fees).   Yet, absent from Defendants' motion is any discussion of Ms. Keck's ***trademark claims***.     Compare ROA.387-404 (Defendants' ***partial*** motion for summary judgment) with ROA.78¶38-80¶45 (pleadings stating trademark claims).

Thus, Defendants did _not_ seek summary judgment on the trademark claims. They did not fulfill their obligation under Rule 56 to "identify" the trademark claims—a necessary action if Defendants were seeking summary judgment on them.   See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, _identifying each claim or defense — or the part of each claim or defense_ — on which summary judgment is sought.").

This Court's been clear that the movant must identify the claims for which summary judgment is sought.  E.g., Garcia v. United States, 986 F.3d 513, 533 (5th Cir. 2021) ("As the ***moving parties***, Safe Boats and Mercury Marine ***have the burden of 'identifying each claim or defense***—or the part of each claim or defense—***on which summary judgment is sought***.'").

40

Thus, because Defendants did not identify the trademark claims in their motion for *partial* summary judgment, the District Court should not have granted summary judgment *in full*, see ROA.1182 n.2, and erred in doing so. It should be reversed.

Three points are key:

1. Copyright claims and trademark claims—as well as copyright fair use and trademark fair use—are not the same.

2. Defendants waived trademark issues and the District Court failed to give notice under Rule 56(f) that it would rule upon the issue.

3. Our adversarial system and party-presentation rule assumes that well-counseled parties will raise issues they wish decided.

Each is discussed in turn.

 

***First***, trademark and copyright are not interchangeable.

The Supreme Court has "***consistently* *rejected the proposition that a similar kinship exists between copyright law and trademark law***" as exists between patent and copyright. Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 439 n.19 (1984); id. (emphasizing the "**the fundamental *differences* between copyright law and trademark law**").

Copyright and trademark arise from different statutes—copyright in Title 17 of U.S. Code and trademark Title 15 (Ch. 22) of U.S. code.  They have distinct Constitutional bases—copyright in Article I, §8, Cl. 8's IP clause whereas trademark relies upon the interstate-commerce clause, cf. generally The Trade-Mark Cases, 100 U.S. 82 (1879) (Congress cannot use Constitution's copyright clause to legislate in trademarks.).

Moreover, Ms. Keck's complaint expressly distinguished the copyright claims and the trademark claims.  Compare ROA.78¶¶32-37 (copyright claims as first cause of action) with ROA.78¶38-80¶45 (trademark claims as second cause of action).  And, even copyright's and trademark's fair use have different statutory texts with different legal tests.  Compare 17 U.S.C. §107 (copyright fair use) with 15 U.S.C. §1115(b)(4) (trademark fair use).

The Eighth Circuit has eloquently summed up the differences for a party that had failed to brief the two disparate areas in a motion for summary judgment:

> While AVELA did assert copyright fair use as an affirmative defense, ***trademark fair use and copyright fair use are distinct defenses for distinct claims***.  *These defenses derive from wholly separate statutory provisions, which are constructed differently and formulated specifically for each respective subject area*.  Compare 15 U.S.C. § 1115(b)(4) (trademark fair use under the Lanham Act) with 17 U.S.C. § 107 (copyright fair use under the Copyright Act).  *Neither functionality nor trademark fair use appear in any of AVELA's pleadings or in its motion for summary judgment.  **Accordingly, AVELA has waived these defenses***.

Warner Bros. Entm't, Inc. v. X One X Prods., 840 F.3d 971, 980 (8th Cir. 2016).

The same is true here.  Defendants waived seeking summary judgment on the trademark claims below *at least for purposes of the partial-summary-judgment motion below*.[2]

**_Second_**, district courts *can* raise and grant summary judgment on a claim *sua sponte* but they need to provide notice first:

> While district courts *may* grant summary judgment *sua sponte*, they **_must_** first give the parties 'notice and a reasonable time to respond[.]' Fed. R. Civ. P. 56(f).  **We have 'strictly enforced' the notice requirement**.

D'Onofrio v. Vacation Publs., Inc., 888 F.3d 197, 210 (5th Cir. 2018) (internal citation omitted).  This strict enforcement of Rule 56(f)'s requirement of notice of *sua sponte* ruling is especially true where there is "no pending motion for summary judgment on that claim."  Id.; see id. at 211 (not harmless error where "lack of notice deprived the non-moving party" of the opportunity to brief the issue and submit all relevant evidence); Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 28 F.3d 1388, 1397 (5th Cir. 1994) ("Of course, the power to enter summary judgment *sua sponte* is tempered by the **requirement to provide prior notice**.").

---

[2] Ms. Keck has no objection to facing, on remand, a motion for summary judgment by Defendants that raises and briefs the trademark claims and to which she can respond.

Nor does an exchange at the summary-judgment hearing change this fact. See ROA.2272:19-2273:12. There, the District Court inquired about the lack of briefing on the trademark claims. ROA.2272:20-21 ("Neither of your motions discuss plaintiff's trademark claims."). Defendants' counsel stated that he had been "presuming" that the copyright and trademark claims were one in the same. ROA.2273:1-6. But see ROA.78¶32-80¶45 (pleading them as two separate causes of action).

And, Ms. Keck's counsel confirmed that the District Court did not need to address the issue. ROA.2273:10-12 ("THE COURT: So I don't need to deal with something for the trademark? MR. HIGBEE: Correct."). That's correct. If a movant doesn't brief the issue, then the Court need not address it all. E.g., Britt v. Miss. Farm Bureau Cas. Ins. Co., 2022 U.S. App. LEXIS 33583, *5 (5th Cir. Dec. 6, 2022) ("[L]itigants are not required to move for summary judgment on every claim, indeed, they are not required to move for summary judgment *at all*." (emphasis in original)).

Given that Ms. Keck's counsel expressly agreed that the District Court "d[id]'t need to deal with something for the trademark" (ROA.2273:10-23) and given that no notice was given that the Court intended to *sua sponte* rule upon the trademark claims, see Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable time to respond"), the District Court's later ruling, ROA.1182 n.2, was a surprise.

***Third***, *sua sponte* dismissals of claims are in considerable tension with the party-presentation rule.

"In our adversarial system of adjudication, we follow the principle of party presentation." United States v. Sineneng-Smith, 140 S. Ct. 1575, 1579 (2020). Under this salutary rule, courts "do not, or should not, sally forth each day looking for wrongs to right" but should rather "wait for cases to come to them, and when cases arise, courts ***normally decide only questions presented by the parties***." Id. In this sense, a capacious reading Rule 56(f) permitting *sua sponte* summary judgment where no party had moved for relief and where the court gave no notice of its intention to rule is in consider tension with the party-presentation rule.

In fact, this Court has repeatedly taken note of the party-presentation rule and its importance to a system of adversarial litigation. E.g., Crittindon v. LeBlanc, 37 F.4th 177, 190 (5th Cir. 2023) ("The Supreme Court recently reminded us that our task is not to come up with arguments the parties should have made, but to decide the ones they make.").[3]

---

[3] An illuminating exchange on the party-presentation rule shows that, though not all jurists agree on its precise contours, all do appear to agree that courts *should not be granting "relief that no party asked for*." Compare United Nat. Foods, Inc. v. NLRB, 66 F.4th 536, 555 (5th Cir. 2023) (Oldham, J., dissenting) ("[T]he Supreme Court reversed after the Ninth Circuit invited three non-parties to brief and orally argue questions *not raised by the appellant and then awarded relief that no party had asked for*.") with id. at 546 (majority op.) ("[I]t would be improper for us to cross the bench to counsel's table and litigate the case for it.").

* * * * *

Below the District Court granted summary judgment on trademark claims without identification by Defendants in their briefing; without providing notice and an opportunity for Ms. Keck to brief the issue; and in violation of the party-presentation rule since not even the cross-motion had addressed the trademark issues in the suit.

Ms. Keck has no objection to facing a trademark summary-judgment motion on the merits on remand, but she strenuously objects to a no-notice, no-briefing summary disposition, especially after her counsel had confirmed to the District Court that no action needed to be taken on the trademark claims—*because Defendants failed to identify the claims or brief them in their motion for summary judgment*.  This Court should reverse.

**B.**   **The District Court should not have dismissed the trademark claims because copyright fair use does not apply to trademark and, under the correct standard, there is no trademark fair use here.**

The District Court did *not* apply *trademark's* fair-use standard to the *trademark* claims.  ROA.1182 n.2.  Instead, it applied *copyright's* fair-use standard to *trademark* claims.

That was error.

If a court decides a claim or issue, it should apply the correct legal standard. See, e.g., Kamen v. Kemper Fin. Servs., 500 U.S. 90, 99 (1991) ("Having undertaken to decide this claim, the Court of Appeals was not free to promulgate a federal common law demand rule without identifying the proper source of federal common law in this area."); Thompson v. Runnels, 705 F.3d 1089, 1098 (9th Cir. 2013) ("[W]e have the authority to identify and apply the correct legal standard, whether argued by the parties or not."); Hubbell v. FedEx SmartPost, Inc., 933 F.3d 558, 571 (6th Cir. 2019) ("Issues may be waived; application of a legal standard may not.").

Thus, to the extent the District Court was going to rule on the trademark claims at all, it should have used the correct legal standards—*i.e.*, the statutory legal standard derived from 15 U.S.C. §1115(b)(4) that governs trademark fair use—not the copyright standards.

Indeed, the fact that the District Court failed to apply the correct trademark fair-use standard is, alone, a sufficient basis to reverse the District Court's order as to the trademark claims.

Yet, if this Court applied the correct standard, it should reverse the District Court's grant of summary judgment on the trademark claims.  The statutory defense of trademark fair use is set forth in 15 U.S.C. §1115(b)(4).  By the statutory text, trademark fair use only applies where the use is "*otherwise* than as a mark"—meaning that the defendant is *not* using the trademark as a trademark.  15 U.S.C. §1115(b)(4); see Southern Co. v. Dauben Inc., 324 F. App'x 309, 315 (5th Cir. 2009) (Trademark "[f]air use is defined as 'a use, otherwise than as a mark[.]'" (quoting 15 U.S.C. §1115(b)(4)).

This statutory language means that, in trademark, "fair use is limited, however, insofar as the use cannot be one that creates a likelihood of confusion as to source, sponsorship, affiliation, or approval."  E.g., Bd. of Supervisors for La. State Univ. Agric. & Mech. College v. Smack Apparel Co., 550 F.3d 465, 488 (5th Cir. 2008); Horphag Research Ltd. v. Garcia, 475 F.3d 1029, 1038 (9th Cir. 2007) (not trademark fair use to "appropriate the cachet of the trademark"); Kelly-Brown v. Winfrey, 717 F.3d 295, 305 (2d Cir. 2013) (Trademark fair use has "three elements: that the use was made (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith.").

48

Defendants' products use Michel Keck's name as a source identifier of her products and her art. E.g., ROA.519. That's infringing use and is not fair use for reasons the Third Circuit has aptly described when citing the leading trademark treatise:

> Thus, **likelihood of confusion is inevitable, when**, as in this case, the identical mark is used concurrently by unrelated entities. See also 2 MCCARTHY [ON TRADEMARKS], § 23:3 ("Cases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports. Such cases are 'open and shut' and do not involve protracted litigation to determine liability for trademark infringement.").

Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 195 (3d Cir. 1990). The wholesale appropriation of Ms. Keck's copyrighted work—*and her trademark*—in presenting a competing product is not a trademark fair use. Defendants' use cannot be a fair use because it creates "a likelihood of confusion as to source, sponsorship, affiliation, or approval." See Smack Apparel, 550 F.3d at 488.

Given that this issue wasn't briefed below, Ms. Keck believes the simplest way to address the trademark claims on the merits is to simply reverse the District Court's order, without prejudice to Defendants seeking, on remand, filing a motion for summary judgment that appropriately briefs the issue. Yet, Ms. Keck respectfully submits that this use is as a mark—identifying the source—and is clearly not fair use.

49

**C.    The District Court should also be reversed because, even assuming *arguendo* copyright fair use could apply to trademarks, the District Court misapplied copyright fair-use standards.**

Ultimately, even if one excuses the fact that the District Court ruled upon and *sua sponte* granted summary judgment to Defendants on an affirmative defense as to trademark claims not briefed, <u>see</u> Section II.A, *supra*, and even if one further excuses that the District Court applied wholly inapplicable <u>*copyright*</u> fair-use frameworks as though they provided the legal standard applicable to resolve <u>*trademark*</u> claims, <u>see</u> Section II.B, *supra*, this Court should still reverse on the trademark claims.

That's because the District Court's rationales for granting summary judgment on the *trademark* claims were the same faulty rationales it deployed to resolve the *copyright* claims under copyright's fair-use framework.  <u>ROA.1182</u> n.2 ("copyright arguments also apply to Plaintiff's trademark claims").  Accordingly, even if one assumed without deciding that the copyright fair-use framework <u>*could*</u> apply to trademark claims, the District Court erred in applying that framework. <u>See</u> Section I, *supra*.

In other words, any errors on the copyright fair-use analysis discussed above apply equally well as bases for reversal on the trademark claims when operating under the District Court's assumption that copyright fair use can function as a defense to trademark infringement.

## III.    THE DISTRICT COURT ERRED ON COPYRIGHT FEE-SHIFTING.

After its decision on copyright fair use discussed above, <u>see</u> Section I, *supra*, the District Court then granted over $100,000 as a "reasonable attorney's fee" against Ms. Keck pursuant to §505 of the Copyright Act, <u>ROA.2208-2220</u> (fee order).  This Court should not let this deeply erroneous fee order stand.  It should be vacated or reversed.

This Court should vacate the fee order as a matter of course if it reverses (or vacates) on copyright fair use.  After all, reversal (or vacatur) on copyright fair use would reopen the judgment; would mean that there isn't yet a "prevailing party" as to the copyright claims eligible to seek fee-shifting under Section 505 of the Copyright Act; and would, accordingly, render a copyright-fee award premature. <u>See</u> Section III.A, *infra*.

Even if this Court reaches the merits of copyright fees, the fee order should not stand.  <u>See</u> Section III.B-C, *infra*.  Rather, it should be vacated as an abuse of discretion because it adopted incorrect legal standards for deciding copyright fee-shifting.  <u>See</u> Section III.B.i, *infra*.  Furthermore, the fee order should be reversed because a correct application of the <u>Fogerty</u> factors—an application free from clear legal and factual errors—would have denied fee-shifting here.  <u>See</u> Section III.B.ii, *infra*.  Finally, the amount of $100,000 was error because it included fees for defenses on which Ms. Keck won.  <u>See</u> Section III.C, *infra*.

**A.** **If this Court reverses or vacates the District Court on copyright fair use, then the copyright-fees order should be vacated because Defendants would no longer be prevailing parties.**

Reversal or vacatur on the merits of the copyright-infringement claims, see Section I, *supra*, would be dispositive as to the District Court's fee award. That's because reversal or vacatur on the merits would entail vacating the copyright-fee order as a matter of course.

Where this Court reverses or vacates a decision on the merits, it also vacates any related fee-shifting order that was predicated upon that merits decision. E.g., Luv N' Care, Ltd. v. Groupo Rimar, 844 F.3d 442, 451 (5th Cir. 2016) ("Reversal on the breach of contract claim likewise *requires* vacation of the attorney's fees award[.]"); Nesom v. Brown & Root, Inc., 987 F.2d 1188, 1195 (5th Cir. 1993) ("A different decision on the merits may warrant reversal of the decision on attorneys' fees.").

In the event of reversal or vacatur on the merits, there would no longer be any prevailing party. E.g., §505 (permitting only "prevailing party" to seek fees); Luv N' Care, 844 F.3d at 451 (Reversal or vacatur on the merits makes it "premature at this juncture to conclude which party will be the 'prevailing party,' entitled to reasonable attorney's fees[.]"); Graham-Sult v. Clainos, 738 F.3d 1131, 1157 (9th Cir. 2013) ("Because we reverse the district court's dismissal of this claim, we also vacate the fee award[.]").

* * * * *

If this Court reverses or vacates on the merits of the copyright-infringement claims, then it should vacate the copyright-fee order as a matter of course. The copyright fair-use portions of this appeal raise what are effectively threshold issues for deciding the fee issues. In that sense, reversing or vacating the grant of summary judgment below on the copyright claims would render the remaining fee issues unnecessary to decide.

**B.    The District Court's copyright fee order should be reversed because it committed legal error in applying the *Fogerty* factors and adopted an erroneous dual-standard presumption to fees.**

The District Court applied the wrong legal standard when deciding copyright fees—using the long-rejected "dual" standard, adopting a presumption to fees, and invoking the different civil-rights fees framework.  <u>See</u> Section II.B.i, *infra*.  The District Court also committed clear legal and factual errors when applying copyright's <u>Fogerty</u> fee factors—including by failing to consider them, as required, *in light of the purposes of the Copyright Act itself*.  <u>See</u> Section II.B.ii, *infra*.  Thus, if this Court does decide the fee issues on their merits, the decision below should be reversed.

i.    <u>The District Court abused its discretion by applying incorrect copyright fee-shifting standards.</u>

It is axiomatic that applying an incorrect legal standard is an abuse of discretion.  <u>Klier v. Elf Atochem N. Am., Inc.</u>, <u>658 F.3d 468, 474</u> (5th Ci<u>r. 2011</u>) ("By definition, a district court ***abuses its discretion when it*** […] ***applies an incorrect legal standard***."); <u>see</u> <u>also</u> <u>Duncan v. Governor of the Virgin Islands</u>, <u>48 F.4th 195, 213</u> n.20 (3d Ci<u>r. 2022</u>) ("application of an incorrect legal standard is by definition an abuse of discretion.").  For its part, the Supreme Court has stressed that trial courts "***must*** apply the correct standard[.]"  <u>Fox v. Vice</u>, <u>563 U.S. 826, 839</u> (2011).

54

In turn, "the appeals court ***must*** make sure that has occurred." Id. After all, application of the wrong legal standard "would pretermit the exercise" of a district court's discretion. Fogerty v. Fantasy, Inc., 510 U.S. 517, 533 (1994). Here, three legal errors in the standard each constituted an abuse of discretion in the District Court's fee-order:

1.    The District Court's fee order did not apply the "evenhanded" standard, as required by Fogerty.

2.    Its fee order adopted a "presumption" to fee-shifting, prohibited by both Fogerty and Kirtsaeng.

3.    Its fee order applied civil-rights fee-shifting law to a copyright fee-shifting decision, contravening Fogerty.

Each was legal error. Each was—and was "by definition"—an abuse of discretion. See Klier, 658 F.3d at 474.

*First*, the fee-order erred by failing to apply the "even-handed" standard.

In Fogerty, the Supreme Court resolved a Circuit split over copyright's fee-shifting standard. Some Circuits had adopted the "dual standard"—treating "successful plaintiffs and successful defendants *differently*." Fogerty, 510 U.S. at 520. Other Circuits used an "evenhanded" standard—one with "*no distinction*" in standard between "prevailing plaintiffs and prevailing defendants." Id.

<u>Fogerty</u> chose the "evenhanded" standard.   <u>Id.</u> at 534.   As the Supreme Court explained, neither the text nor the legislative history of §505 supports "treating prevailing plaintiffs and defendants differently" when deciding copyright fees. <u>Id.</u> at 523.   Nor do copyright-specific policy concerns.   <u>Id.</u> at 524.   After all, "in the copyright context" the little guy—*i.e.*, copyright's proverbial "starving artists"—could be on either side.   <u>Id.</u> at 524.   Copyright fees weren't meant to ruin ordinary artists—defendant <u>*or*</u> plaintiff.

Thus, <u>Fogerty</u> chose the evenhanded standard.   <u>Id.</u> at 534 ("Prevailing plaintiffs and prevailing defendants are to be treated alike").  In turn, this Court has followed suit, stressing that "courts **<u>must</u>** treat prevailing plaintiffs and prevailing defendants alike" on fees.  <u>E.g.</u>, <u>Dig. Drilling Data Sys., L.L.C. v. Petrolink Servs.</u>, <u>965 F.3d 365, 385</u> (5th Cir. 2020).

Yet, that's not what the District Court did below.  Instead, the District Court restated the standard as a defendant-friendly dual standard: "*When the prevailing party is a **<u>defendant</u>** who receives no award, the presumption in favor of awarding fees is usually strong.*"  <u>ROA.2221</u>.  That was error.  And, here that error had bite. After all, the fee order failed to credit issues on which Plaintiff won and evidence supporting Plaintiff's claims.  <u>See</u> Section III.B.ii, *infra*.  The fee order failed to abide <u>Fogerty</u>'s command that there is "no distinction" between plaintiffs and defendants for copyright-fee purposes.  <u>Id.</u> at 521.

***Second***, the fee order repeatedly applied a "presumption" in favor of awarding fees.  ROA.2210 ("presumption in favor of awarding fees"); ROA.2211 ("presumption in favor of fees").

That too was error.

There is simply "**no presumption** for fee awards in Copyright Act claims." E.g., Killer Joe Nev., LLC v. Doe, 807 F.3d 908, 911 (8th Cir. 2005) (citing Fogerty); Dig. Drilling, 965 F.3d at 385 (5th Cir. 2020) ("In Fogerty[…] the Court imposed two restrictions[.]").  Indeed, following Fogerty, the Supreme Court's Kirtsaeng opinion considered and then *rejected* a presumption-to-fees approach. Kirtsaeng v. John Wiley & Sons, Inc., 579 U.S. 197, 201 n.1 (2016); 5 NIMMER ON COPYRIGHT §14.10[5][c][i] (2023).

Notably, some of this Court's cases discuss how copyright fees are awarded "*routinely*[.]"  Hunn v. Dan Wilson Homes, Inc., 789 F.3d 573, 588-589 (5th Cir. 2015).  Yet, awarding fees routinely is not the same as the District Court's legal "presumption"—a presumption now twice discarded by the Supreme Court.  A presumption, by definition, is presumed unless overcome.  Yet, copyright fees are not presumed.  §505 ("may award"—not should award); see Fogerty, 510 U.S. at 534.  After all, fee-shifting statutes comes in a variety of flavors—and saying that fees are awarded "routinely" is a far cry from saying that fees are *presumed* unless disproven in a given case.

Some fee-shifting statutes mandate fees.  See, e.g., Metabolife Int'l, Inc. v. Wornick, 2000 U.S. Dist. LEXIS 23742, *4 (S.D. Cal. Jan. 13, 2000) ("anti-SLAPP statute requires automatic fee awards").  Other statutes adopt a presumption to fees, akin to the British Rule, where fees are the norm unless the presumption is overcome, such as civil-rights fees.  See Fogerty, 510 U.S. at 533 (rejecting such a presumption for copyright fees).

Then there's discretionary fees—like copyright's "routinely" awarded fee.  See Dig. Drilling Data, 965 F.3d at 386.  For §505, fees are not presumed but there's also no "presumption *against* granting fees."  5 NIMMER ON COPYRIGHT §14.10[D][5][*c*][*i*].  Thus, this Court's "routinely" awarded fees language is not a presumption in favor of fees—nor even an indication that fees should be awarded more often than not.

By analogy, suppose someone goes to church every Sunday.  We might say that she "routinely" attends church.  Yet, her routine attendance doesn't mean she would be rightfully presumed to be at her church any given day—or even that we would expect her to be at her church on a majority of days.  So too here.  Routinely doesn't mean copyright fees are presumed—or are even awarded more often than not.  See Fogerty., 510 U.S. at 533-534 (rejecting various iterations of the British Rule for copyright fees).

Copyright fees are routine, not exceptional.  Yet, it's still error to presume that they should be awarded.  **Simply put, it was an abuse of discretion for the fee order to employ a presumption.**  See ROA.2211 ("providing a presumption in favor of fees.").

*__Third__*, the order erred by relying on civil-rights fee-shifting law when deciding whether to award copyright fees.

Fogerty took pains to distinguish civil-rights fee-shifting under 28 U.S.C. §1988 and copyright fee-shifting under §505.  Despite "virtually identical language" in the two fee-shifting statutes, the Supreme Court stressed that the "goals and objective of the two Acts" were starkly different.  Id. at 524.  It's because of these differences that the Court contrasted civil-rights fee-shifting from copyright fee-shifting.  And, the Court further stressed that whatever factors are considered in a copyright-fees order must be guided by the unique purposes of the Copyright Act.  Id. at 534 n.19 ("so long as such factors are *__faithful to the purposes of the Copyright Act__*").

Yet, the fee order hardly mentions the purposes of the Copyright Act. Instead, the Order cites a *civil-rights* case to say that say that "[i]n determining whether to award attorneys' fees, the Supreme Court has held that "the most critical factor is the degree of success obtained."  ROA.2210 (citing Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)).  That too was error.

* * * * *

The fee order applied an incorrect legal standard when it adopted a long-rejected dual standard rather than the evenhanded standard; when it presumed fees should be awarded; and when it applied civil-rights fee-shifting standards to a copyright fee-shifting decision.  Each was legal error and, by definition, an abuse of discretion.  This Court should vacate.  <u>See</u>, <u>e.g.</u>, <u>Dig. Drilling</u>, <u>965 F.3d at 387</u> (5th Ci<u>r. 2020</u>) ("Because the district court [...] failed to apply the correct legal standard from <u>Fogerty</u>, we vacate[.]").

ii.    The District Court committed clear legal and factual errors when applying the *Fogerty* factors.

Beyond getting the legal standard for copyright fees wrong, the District Court also committed numerous clear legal and factual errors in its application of the Supreme Court's Fogerty fee factors.

### *Factor 1*: Objective Unreasonableness

The first Fogerty factor asks "whether the losing party advanced an unreasonable" copyright claim or defense.  Kirtsaeng, 579 U.S. at 207.  Notably, this factor is to be awarded "substantial weight" in the overall balancing of factors.  Id. at 199.  At core, this objective-unreasonableness factor goes to the legal "strength and weakness" of the copyright claim—*i.e.*, the likelihood under preexisting law of winning based upon the facts of the case.  Id.

Below, the District Court determined that Keck's copyright "claim was unreasonable."  ROA 2211–2212.  Yet, the fee order committed clear legal and factual errors in reaching that conclusion.

Initially, the fee order misconstrued the summary-judgment order.  The fee order claims that "the Court held the two most important elements [of fair use] ***strongly*** favored Defendant."  ROA.2212.  That's false.  The summary-judgment order said that the "first factor leans *slightly* in favor of Defendants."  ROA.1188.  The District Court simply misstated its own findings on fair use, thereby tainting the fee order's assessment of the objective reasonableness of the claims.

61

Beyond that, the fee order committed two additional clear errors:

1.     It credited legally irrelevant considerations that do not speak to the viability of the copyright claims.

2.     It failed to credit legally relevant issues and elements on which Keck had won on the merits.


*First*,  the District Court credited a host of legally irrelevant considerations that simply don't speak to the viability of the claims.  ROA.2211-2212.  Refusal to take a settlement offer just doesn't speak to viability of the claims.  ROA.2211. Likewise, Defendants' "$240 in sales" go to damages—not whether the defendant is liable.  Compare ROA.2211 with Bell v. Wilmott Storage Servs., LLC, 12 F.4th 1065, 1068 (9th Cir. 2021) (A "plaintiff may elect statutory damages in place of actual damages, thus providing causes of action for infringement even when the infringement has not actually worked any financial harm[.]"); see also §504(c) (permitting "$200" for innocent infringement).  Nor is a "willful" mental state an element of a copyright claim.  ROA.2211.  Indeed, "copyright infringement is a strict liability offense, in which a violation does not require a culpable state of mind."  E.g., Brammer, 922 F.3d at 265 (4th Cir. 2019).

In sum, none of the District Court's considerations speak to the viability of Keck's copyright claims.  Neither settlement talks, nor modest damages, nor lack

of a "willful" mental state has any bearing on whether a copyright claim is viable in the sense that Kirtsaeng cares about.

*Second*, the District Court also committed clear legal and factual error by what it ignored. The fee order entirely fails to credit legally relevant findings supporting the strength of Keck's copyright claims. ROA.2211-2212.

The fee order fails to credit that Keck had successfully registered her copyrights with the United States Copyright Office, speaking to the element of ownership. ROA.423-425; Feist Pubs., Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); §410(c). The fee order also fails to credit that the District Court had found that Keck presented a prima facia case of infringement—establishing all necessary elements to assert a claim. ROA.1184 ("provides evidence to establish a prima facie case of infringement.").

The fee order fails to credit that Keck had won on the vast majority of over 20 affirmative defenses asserted. Compare ROA.1180 ("granted summary judgment for Plaintiff concerning all affirmative defenses except for fair use and innocent infringement.") with ROA.2288. It fails to credit that Keck had won on two of the four fair-use factors. ROA.1188.

And, it failed to credit that even the District Court thought the first fair-use factor was a close call. ROA.1188 ("The Court concludes that the first factor leans

63

*slightly* in favor of Defendants."); but see ROA.2212 (misstating that it had found this factor as "***strongly***" favoring Defendants).

Regardless of the District Court's oversights, properly crediting these findings demonstrates that Keck had strong, objectively reasonable copyright claims.  Thus, the fee order's determination to the contrary rested on clear error.  Here, the first fee factor—the most important factor—weighs decidedly *against* fee-shifting because these are objectively reasonable claims.

### *Factor 2*: **Frivolousness**

The second factor is frivolousness.  A claim, however, is only frivolous where that claim is "clearly baseless," and involves "fantastic or delusional scenarios."  Neitzke v. Williams, 490 U.S. 319, 327-328 (1989) (construing different statute).

Below, the District Court did not make a clear finding on frivolousness.  ROA.2211.  Instead, it considering the frivolousness factor together with the unreasonableness factor, determining only that the claims were unreasonable—but nowhere finding that the claims were somehow frivolous.  ROA.2211.

That because they're not frivolous.

Again, as the District Court found, Keck sufficiently demonstrated a prima facia case of copyright infringement; was the registered copyright holder; and won

summary judgment on over twenty affirmative defenses. That's a far cry from frivolous.

Notably, courts tend to treat frivolousness as a separate factor from the objective-unreasonableness factor. See Kirtsaeng, 579 U.S. at 202 ("[W]e noted with approval 'several nonexclusive factors' to inform a court's fee-shifting decisions: 'frivolousness, motivation, objective unreasonableness[.]'"). Yet, regardless of whether considered as a standalone factor, or considered together with the first factor, because the claims here were not frivolous this consideration weighs *against* fees.

### *Factor 3*: Motivation

Below, the District Court properly found that the motivation factor weighed *against* fees. ROA.2212-2213. The District Court found that there was no "evidence of bad faith" in bringing these claims. ROA.2213. To the contrary, the District Court found that the evidence demonstrated "Plaintiff's belief that Defendants violated her rights[.]" ROA.2213; Docs. 61-1; 70-1; 70-3.).

Accordingly, this third factor weighs *against* fees.

### *Factor 4*: Particular Need for Deterrence / Compensation

The final <u>Fogerty</u> factor is "the need in particular circumstances to advance considerations of compensation and deterrence."  <u>Kirtsaeng</u>, <u>579 U.S. at 202</u>. Below, the District Court determined that this factor weighed in favor of fees. <u>ROA.2214</u>.  But that determination rested upon clear legal and factual errors because the order both misconstrued the record and misconstrued the purposes of the Copyright Act.

*First*, the fee order failed to be "faithful the purposes of the Copyright Act" when considering fees.  <u>See</u> <u>Fogerty</u>, <u>510 U.S. at 534</u> n.19.  Given that the District Court itself thought this was a close fair-use case with two factors against and two factors in favor (one "*slightly*" so), this is precisely the kind of case that the Supreme Court has said *should* come to court.  Close cases are the kinds of cases that Section 505 decisions should encourage be brought to court and provide clarity to the public: "Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, **it is peculiarly important that the boundaries of copyright law be demarcated *as clearly as possible***." <u>Fogerty</u>, <u>510 U.S. at 527</u>.

Yet, the District Court thinks that "the issues at stake in this case could and should have been addressed by parties before the Court ever got involved[.]" <u>ROA.2214</u>.

66

That misses the point that litigation will produce more clarity in copyright law—and so should not be deterred.

By contrast, an out-of-court resolution would have done nothing to demarcate "the boundaries of copyright law"—which in turn frustrates the public interest in clearly demarcated boundaries of copyright law, especially in the digital age. Indeed, "[l]egal systems based on precedent depend on cases to present novel fact patterns, which enable courts to articulate new principles of law or to clarify old ones with greater precision. See Cruz v. Arizona, 143 S. Ct. 650, 663 (2023) (Barrett, J., dissenting).

*Second*, the fee order commits clear factual error when basing a need for deterrence on Defendants' use of the work as "an educational teaching tool." ROA.2214. Yet, *as to Keck's works*, Defendants were directly engaged in e-commerce—not education. ROA.605¶9. Defendants were *selling* these infringing materials online; they were not teaching in a classroom—nor even leading classes in an online-based classroom. The analysis would be quite different for Defendants' direct teaching activities, *i.e.*, *for the teacher's classroom activities* as opposed to an online e-commerce platform that, wittingly or not, was predicated on widespread unauthorized uses of copyrighted materials and a business that did not seek licenses for whatever reasons.

Simply put, Ms. Keck did not sue a teacher for using a "teaching tool." ROA 2214.  She sued an e-commerce platform and website that was disregarding intellectual-property rights en masse.

*Third*, the District Court relied on Chivalry to hold that Keck's claims needed to be deterred with fees.  ROA.2213 (citing Chivalry Film Prods. v. NBC Universal, Inc., 2007 WL 4190793, at *3 (S.D.N.Y. Nov. 27, 2007)).  Yet Chivalry explains that deterrence is desirable "*in an objectively unreasonable copyright*" case.  Id.  Because Keck's copyright claims were objectively reasonable claims, as explained above, Chivalry actually weighs *against* fees here.

Given the foregoing there were no "*particular* circumstances" rooted in the purposes of the Copyright Act that required compensation and deterrence here. See Kirtsaeng, 579 U.S. at 202.

Accordingly, this factor also weighs against fees.

### *Factors 1-4*: Weighing the *Fogerty* Factors

Here, the Fogerty factors weigh *against* fee-shifting.  Objective unreasonableness weighs against it.  The frivolousness factor weighs against it. Motivation weighs against it.  And, there's no special need to deter or special need for compensation.

Yet, even just given the clear errors regarding the objective-unreasonableness factor, *i.e.*, the most important factor, the fee order should be reversed because a proper application of the factors would mean the most important factor, the motivation factor, and the frivolousness factor weigh against fees.

C.    **In the alternative, the District Court's fee award overlooked the scope of Ms. Keck's objections and awarded fees for defenses on which Ms. Keck prevailed.**

In determining the amount of fees, the District Court imposed $102,404 of the $128,005 requested by Defendants.   ROA.2218-2219.   The District Court seemed to believe that Ms. Keck was only objecting to $17,925 in the requested amount.  ROA.2218.

That was clear error.  *After* saying that the amount should be "reduced by *at least* $17,925" based upon line-item billings, ROA.2132, Ms. Keck further objected to Defendants' request for fee-shifting for time spent on issues and disputes she had *won*,   ROA.2132-2133 (objecting to fees sought where "Keck prevailed on the Motion to Dismiss, succeeded in obtaining summary judgment on 22 of 24 of Mix Creative's affirmative defenses, succeeded in proving a prima facie infringement case, and only narrowly lost the fair use issue").

The District Court acknowledged that Ms. Keck had prevailed "concerning *all* affirmative defenses *except for* fair use and innocent infringement." ROA.1180.  Accordingly, the District Court should not have awarded Defendants fees for unavailing defenses—just as prevailing plaintiffs do not receive fees for unavailing claims.  See, e.g., Abner v. Kan. City S. Ry. Co., 541 F.3d 372, 383 (5th Cir. 2008) ("cut out the fees charged for work on unsuccessful claims"); McAfee v. Boczar, 738 F.3d 81, 91 (4th Cir. 2013) (same).

## CONCLUSION

This Court should reverse and remand on the merits of both the copyright claims and the trademark claims.  <u>See</u> Sections I-II, *supra*.

If the Court reverses or vacates on the copyright claims, it should also vacate the fee award.  <u>See</u> Section III.A, *supra*.  In the alternative, the Court should reverse the fee award, <u>see</u> Section III.B.ii, *supra*, vacate it for application of the wrong standard, <u>see</u> Section III.B.i, *supra*, or at least remit it, <u>see</u> Section III.C, *supra*.

Date: October 4, 2023                  Respectfully submitted,

                                       **DIGITAL JUSTICE FOUNDATION**
                                       A NONPROFIT, PUBLIC-INTEREST LAW FIRM

                                       By   */s/ Andrew Grimm*
                                            Andrew Grimm
                                            DIGITAL JUSTICE FOUNDATION
                                            15287 Pepperwood Drive
                                            Omaha, Nebraska 68154
                                            (531) 210-2381
                                            Andrew@DigitalJusticeFoundation.org

                                            *Attorney for Appellant*

71

## CERTIFICATE OF COMPLIANCE

This Brief contains **12,816** words, excluding the portions of the Brief exempted by court rules.

This Brief was prepared in Microsoft Word using Times New Roman 14-point font.

Date: October 4, 2023                     Respectfully submitted,

                                          */s/ Andrew Grimm*
                                          Andrew Grimm

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit via the appellate CM/ECF system.  Registered CM/ECF users have been served via the appellate CM/ECF system.

Date: October 4, 2023                Respectfully submitted,

*/s/ Andrew Grimm*
Andrew Grimm